# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAULINO NAHUN RODRIGUEZ OSORIO, | : | No. 3:26cv1206 |
| Petitioner | : | |
| | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| WARDEN, PIKE COUNTY CORRECTIONAL CENTER; TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary of the United States Department of Homeland Security; and TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, | : | |
| Respondents | : | |

## MEMORANDUM ORDER

Before the court is Paulino Nahun Rodriguez Osorio's petition for writ of

habeas corpus filed pursuant to 28 U.S.C. § 2241.[1]  (Doc. 1).  Petitioner

challenges his present detention at the Pike County Correctional Facility ("Pike

---

[1] Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Rodriguez Osorio filed the instant petition while detained at a county prison in Pike County, Pennsylvania.  The petitioner asserts that his continued detention violates his Fifth Amendment right to due process.  He also asserts that the wrong provision of the INA is being used to justify his detention.  Thus, the court has habeas jurisdiction over the petition.  Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

CCF") by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").  He argues that his detention without a bond hearing under 8 U.S.C. § 1225(b)(2) is unlawful.

Section 1225(b)(2) does not apply to individuals like Rodriguez Osorio who have resided within the United States for years.  Therefore, for the reasons set forth below, the petition will be granted, and the petitioner will be released.

By way of brief background, the petitioner is a native and citizen of Honduras. (Doc. 1, Pet. ¶ 1).  He is 32 years old. (Doc. 5-6, Resp. Ex. 5).

On May 25, 2019, Rodriguez Osorio entered the United States five miles west of the San Ysidro, California border crossing where urban Tijuana, Mexico meets border fencing in the rugged areas of the Tijuana River Valley. (Doc. 5-2, Resp. Ex. 1 at ECF p. 2).  He did so with a child he identified as his daughter to apprehending agents from the United States Border Patrol. Id. at ECF pp. 3-4. Rodriguez Osorio and his daughter were taken just north to the Imperial Beach Station for processing as a Family Unit. Id. at ECF p. 4.  Rodriguez raised a credible fear claim and requested a hearing before an immigration judge ("IJ"). Id.

Rodriguez Osorio and his daughter were subject to the Migrant Protection Protocols ("MPP") in place at the time. Id.  That is, federal officers returned Rodriguez Osorio and his daughter to Mexico under a directive not to enter the United States until the date of their hearing before an IJ.  Id.  In conjunction with

2

processing, federal officers served Rodriguez Osorio with a Notice to Appear ("NTA") charging him with violating 8 U.S.C. § 1182(a)(7)(A)(i)(I) as not possessing valid documents at the time of an application for admission.  (Doc. 5-3, Resp. Ex. 2).  The NTA advised Rodriguez of an IJ hearing on September 18, 2019 in San Diego. Id.

The record does not contain any evidence suggesting that Rodriguez Osorio violated MPP directives or failed to appear at the administrative proceedings.  Rather, at some point, Rodriguez Osorio was paroled into the United States as part of the MPP.  (Doc. 5-4, Resp. Ex. 3).  As of March 2021, Rodriguez resided in Philadelphia. Id.  On some other date unknown to the court, the government issued Rodriguez Osorio an employment authorization card. (Doc. 5-6, Resp. Ex. 5 at ECF p. 3).

There is also not much information regarding Rodriguez Osorio's removal proceedings earlier this decade.  As of August 30, 2024, Rodriguez's case was closed by an IJ. Id.  Ostensibly, Rodriguez has been working and raising his children in Philadelphia for several years. Id. at ECF p. 4.

On January 19, 2026, at approximately 6:10 AM, federal officers from ICE, Border Patrol, and the Internal Revenue Service took the petitioner into custody as he was cleaning snow from his vehicle in a residential area of South

Philadelphia. Id. at ECF p. 2. Rodriguez Osorio has been in custody at the Pike County Correctional Facility ("Pike CCF") since January 28, 2026.[2]

DHS revived Rodriguez Osorio's removal proceedings. Id. at ECF p. 4. On May 7, 2026, IJ Corey Combs ordered the petitioner removed to Honduras. (Doc. 5-8, Resp. Ex. 7). The IJ denied Rodriguez Osorio's applications for asylum, and withholding of removal under 8 U.S.C. § 1231(b)(3) and/or the Convention Against Torture ("CAT"). Id. The IJ also denied an application of CAT deferral of removal. The IJ order is not yet administratively final. Rodriguez Osorio reserved the right to appeal. Id. An appeal to the Board of Immigration Appeals is due within the next week.

With his petition for writ of habeas corpus, Rodriguez Osorio argues that he is unlawfully detained as the result of the government's misapplication of 8 U.S.C. § 1225(b)(2)(A), a mandatory detention statute. Per the petitioner, his detention is governed by 8 U.S.C. § 1226(a), a discretionary detention statute. Petitioner further argues that, due to this misclassification, his due process rights are being violated. Petitioner requests his immediate release from Pike CCF.

---

[2] Rodriguez Osorio filed an initial petition for writ of habeas corpus on March 25, 2026 at 3:26cv771. That petition was withdrawn on April 15, 2026. The court dismissed the petition without prejudice on April 16, 2026. Petitioner filed a second petition at the docket number in this case on May 5, 2026.

On behalf of the respondent, the United States Attorney's Office for the Middle District of Pennsylvania asserts that 8 U.S.C. § 1225(b)(2)(A) applies to the petitioner and that his detention does not violate the INA or the Due Process Clause of the Fifth Amendment.  Two appellate decisions align with the respondent's reading of Section 1225, Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026) and Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026).  This manner of statutory construction authorizes indefinite confinement of individuals like the petitioner.

On the other hand, the Second Circuit Court of Appeals, the Sixth Circuit Court of Appeals, the Eleventh Circuit Court of Appeals, and at least 370 federal district court judges, including the undersigned, reject the government's reading of Section 1225.[3] See Lopez-Campos v. Raycraft, No. 25-1965, 2026 WL 1283891, at *13 (6th Cir. May 11, 2026); Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065, 2026 WL 1243395, at *5–20 (11th Cir. May 6, 2026); Cunha v. Freden, No. 25-3141-PR, --- F. 4th ----, 2026 WL 1146044, at *4,

---

[3] This total also includes all judges in the Middle District of Pennsylvania to consider the issue. See Quispe v. Rose, No. 3:25-CV-2276, --- F. Supp. 3d ----, 2025 WL 3537279, at *5 (M.D. Pa. Dec. 10, 2025) (Mehalchick, J.); Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865 at *5 (December 8, 2025) (Mariani, J.); Nossov v. Hoover, No. 1:25-2562, 2026 WL 711691, at *3 (M.D. Pa. Mar. 13, 2026) (Mannion, J.); Diaz Aparicio v. Lowe, No. 3:25-CV-02413, 2026 WL 526702, at *8 (M.D. Pa. Feb. 25, 2026) (Saporito, J.); Romero v. Lowe, No. 4:26-CV-00009, 2026 WL 296215, at *5 (M.D. Pa. Feb. 4, 2026) (Brann, C.J.); Hernandez v. Kunes, No. 1:25-CV-01847, 2026 WL 411726, at *5 (M.D. Pa. Feb. 13, 2026) (Wilson, J.); Chaudhari v. Rose, No. 3:26-CV-242, 2026 WL 540378, at *6 (M.D. Pa. Feb. 26, 2026) (Neary, J.).

5

*14–23 (2d Cir. Apr. 28, 2026); see also Castanon-Nava v. U.S. Dep't of Homeland Sec., No. 25-3050, --- F. 4th ----,  2026 WL 1223250, at *9–21 (7th Cir. May 5, 2026) (Lee, J.) (portion of lead opinion not joined by concurring judge).

With respect to this matter, the court sees no reason to deviate from Lopez-Campos, Hernandez Alvarez, Cunha, or its prior decisions.[4]  In petitioner's case, he was released on his own recognizance at the border into the United States in July 2022.  He lived in the United States for over three years before being detained.  As a result, Section 1226(a) applies to his detention, not Section 1225(b)(2)(A).[5]  Under Section 1226(a), a noncitizen in removal proceedings *may*

---

[4] The Third Circuit heard oral argument regarding this issue on May 11, 2026, based on the government's appeals in Morocho v. Jamison, No. 5:25-CV-05930-JMG, 2025 WL 3296300 (E.D. Pa. Nov. 26, 2025), app. filed sub nom. Morocho v. Warden Phila. FDC, No. 26-1150 (3d. Cir. Jan 22. 2026) and Andrade v. Rose, No. 26-603, 2026 WL 401189 (E.D. Pa. Feb. 12, 2026), app. filed sub nom., De Andrade v. Director Phila. Field Off. Immig., No. 26-1451 (3d Cir. Mar. 2, 2026).

[5] Rodriguez Osorio is an "applicant for admission" under Section 1225(a), but he is not "seeking admission" because he is not requesting lawful entry into the United States after inspection and authorization. Cunha, 2026 WL 1146044, at *23.  His application for asylum does not evidence that he is seeking admission but reflects efforts to obtain lawful status and avoid removal.  Hernandez Alvarez, 2026 WL 1243395, at *7 ("an alien's status as 'admitted' conveys more than a right to lawfully remain in the United States -- indeed, there are many forms of 'lawful status' that grant an alien the right to remain, yet do not necessarily amount to 'admission,' such as asylum and temporary protected status").  Moreover, the government's reading of Section 1225 "defies the statute's context, structure, history, and purpose; contradicts the Supreme Court's dicta in Jennings [v. Rodriguez, 583 U.S. 281 (2018)] and longstanding Executive Branch practice; and its interpretation of the statute raises serious constitutional questions that should be avoided even if the statutory language were ambiguous." Cunha, 2026 WL 1146044, at *23.

6

be detained pending a decision on removal.  However, pending a removal decision, the noncitizen may also be released on bond or conditional parole following an individualized hearing before an immigration judge. 8 U.S.C. § 1226(a)(1)–(2); 8 C.F.R. §§ 236.1(d), 1236.1(d).

A bond hearing, however, is not an appropriate remedy in this case. Rodriguez Osorio's petition also raises a claim for violation of his right to due process under the Fifth Amendment of the United States Constitution.  The record reflects that Rodriguez Osorio entered the United States illegally and was apprehended with his daughter at or near the United States-Mexico border. People who enter this country without legal authorization are not stripped immediately of all their rights because of this single illegal act. See Lozano v. City of Hazleton, 496 F. Supp. 2d 477, 498 (M.D. Pa. 2007), aff'd in part, vacated in part, 620 F.3d 170 (3d Cir. 2010), cert. granted, judgment vacated sub nom. City of Hazleton, Pa. v. Lozano, 563 U.S. 1030 (2011), and aff'd in part, rev'd in part, 724 F.3d 297 (3d Cir. 2013).  That is, the Due Process Clause applies to everyone, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

To reiterate, "[n]o person," including the petitioner, "shall…be deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V.

_____

7

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (citation omitted); see also Zadvydas, 533 U.S. at 721 (Kennedy, J., dissenting) ("both removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious.").

Based on the analysis above, Rodriguez Osorio has been detained for approximately six months pursuant to a statute that does not apply to him. [6]

---

[6] Under such facts, a consideration of the procedural due process factors in Mathews v. Eldridge, 424 U.S. 319 (1976) leads to a conclusion that Rodriguez Osorio's indefinite imprisonment at Pike CCF without bond is a violation of his constitutional rights. Those factors are: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and 3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Mathews, 424 U.S. at 335. First, petitioner's private interest is the interest in not being physically detained by the government, which "is the most elemental of liberty interests[.]" Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). "The restriction of liberty is particularly acute here where, absent a bond hearing, he would be detained for months or even years while his case proceeds." Cunin v. McShane, No. 3:25-CV-1887, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025) (Neary, J.) (citation omitted). Second, he has been detained without any apparent procedural safeguards, including the ability to obtain a bond hearing. See id. ("There is a certainty—not merely a risk— that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely."); see also Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865, at *6 (M.D. Pa. Dec. 8, 2025) (citing Bethancourt Soto v. Soto, No. 25-CV-16200, 807 F.Supp.3d 397, 409 (D.N.J. 2025); Quispe v. Rose, No. 3:25-CV-02276, 2025 WL 3537279, at *7 (M.D. Pa. Dec. 10, 2025)). As to the third consideration, the government has an interest in detaining noncitizens to ensure their appearance at future immigration proceedings and to prevent danger to the community. The government believes that it may vindicate those interests through indefinite detention without any individualized determination that this petitioner poses a flight risk or danger. But this goes too far for the reasons discussed in the body of this memorandum.

Under such facts, a consideration of the procedural due process factors in Mathews v. Eldridge, 424 U.S. 319 (1976) leads to a conclusion that Rodriguez Osorio's imprisonment at Pike CCF without a bond hearing under a mandatory detention statute is a violation of his constitutional rights.  Absent relief on this petition, he faces many more months of detention even if he chooses not to appeal the IJ's removal order before next week.

Habeas courts "have the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." Boumediene v. Bush, 553 U.S. 723, 779 (2008).

In this case, Rodriguez Osorio will be released.[7]  The response does not provide any indication that the petitioner is a danger to the community or a flight risk.  There are no criminal convictions or arrests of record.  And despite the presence of IRS agents when he was taken into ICE custody in South Philadelphia, there is no evidence that the petitioner even failed to pay his taxes.

---

[7] Rodriguez Osorio's request for attorneys' fees and costs under the Equal Access to Justice Act ("EAJA") is not yet ripe for disposition.  A habeas proceeding challenging immigration detention under 28 U.S.C. § 2241 is a "civil action" for purposes of the EAJA, 28 U.S.C. § 2412(d)(1)(A), and the law "unambiguously applies to habeas challenges to immigration detention under 28 U.S.C. § 2241." Michelin v. Warden Moshannon Valley Corr. Ctr., 169 F.4th 418, 432 (3d Cir. 2026).  Petitioner will be permitted to file a motion for costs and fees pursuant to the EAJA within 30 days of the entry of judgment. 28 U.S.C. § 2412(d)(1)(B); Villa Hernandez v. Kunes, No. 1:25-CV-01847, 2026 WL 411726, at *7 (M.D. Pa. Feb. 13, 2026) (Wilson, J.).

With respect to risk of flight, Rodriguez Osorio has minor children in the United States, one of whom is a United States citizen. An IJ administratively closed his removal proceedings in the past. There is no evidence of Rodriguez Osorio violating the terms of MPP or any other requirement imposed on him prior to detention. Based on the above, only immediate release will remedy the due process violation in this case.

The court will impose other conditions on the petitioner's release. The government will be temporarily enjoined from re-arresting Rodriguez Osorio for a period of seven days to ensure the effectiveness of the habeas remedy. The government may not impose additional conditions on Rodriguez Osorio's release, including any form of body-worn electronic monitoring, unless those conditions were in place immediately before his detention.

Consequently, for the reasons set forth above it is hereby **ORDERED** that:

1) Paulino Nahun Rodriguez Osorio's petition for writ of habeas corpus, (Doc. 1), is **GRANTED**;

2) Rodriguez Osorio's detention is not governed by 8 U.S.C. § 1225(b)(2)(A) and continued detention violates his right to due process of law;

3) The government shall **<u>immediately</u>** release Rodriguez Osorio from its custody;

4) On or before **June 12, 2026 at 12:00 noon**, the government shall file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming that Rodriguez Osorio has been released;

5) The government shall release Rodriguez Osorio under the same conditions that existed prior to his detention, including release: (1) near where the petitioner previously resided; (2) without the imposition of additional conditions; (3) with all clothing and outerwear worn at the time of the detention or other appropriate attire; and (4) with all personal property, including, but not limited to, any driver's license, passport, immigration documents, currency, or cell phone that was seized at the time of detention and that is currently in its custody, possession, or control, whether maintained directly by respondents or by any contracted or affiliated facility;

6) The government is temporarily enjoined from re-arresting Rodriguez Osorio for a period of 7 days to ensure that this habeas remedy is effective;  and

7) The Clerk of Court is directed to **CLOSE** this case.

Date: ___6/4/26___

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

11